UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL SOUZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 4:25-cv-40089-MRG |
| | ) |
| CITY OF FITCHBURG, STEPHEN D. | ) |
| CURRY, in his Individual and Official | ) |
| Capacity, DONNA R. PAWLAK, in | ) |
| her Individual and Official capacities, | ) |
| MARK BARBADORO, in his Official | ) |
| and Individual capacities, SALLY | ) |
| CRAGIN, in her Official and | ) |
| Individual capacities, and PAUL | ) |
| BEAUCHEMIN, in his Individual | ) |
| and Official capacities, | ) |
| Defendants. | ) |
| | ) |

ORDER ON DEFENDANTS' MOTION TO DISMISS (ECF No. 6)

GUZMAN, J.

*Pro se* Plaintiff Samuel Souza ("Plaintiff") brings this suit out of alleged acts taken by the City of Fitchburg ("the City") and five members of its municipal government, Stephen D. Curry ("Curry"), Donna R. Pawlak ("Pawlak"), Mark Barbadoro ("Barbadoro"), Sally Cragin ("Cragin"), and Paul Beauchemin ("Beauchemin") (collectively "Defendants" or "The Defendants") during and after proceedings where Plaintiff's dogs were declared to be a nuisance. Plaintiff seeks $38,123,000.00 for seven counts of alleged constitutional and state law violations. Defendants collectively filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

I.    **BACKGROUND**

1

The following background facts are taken primarily from the allegations in Plaintiff's Complaint, [Compl., ECF No. 5] and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id. The Court also notes that the Complaint is difficult to read;[1] however, the Court endeavors to construe Plaintiff's allegations liberally, given his *pro se* status. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). Further, "[i]t is well established that a district court may take judicial notice of public records or indisputably authentic documents on a 12(b) motion without converting even a 12(b)(6) motion into one for summary judgment." Branch v. F.D.I.C., 825 F. Supp. 384, 398 n.8 (D. Mass. 1993) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). While Plaintiff's Complaint is sparse on certain details, the facts underlying this suit are expounded more fully in public records of the municipal agency proceedings, which the Defendants have attached to their motion.

In their Memorandum of Law in Support of their Motion to Dismiss, Defendants attach multiple exhibits of public records, such as Board of Health meeting minutes and exhibits and Fitchburg District Court filings. [See e.g. ECF Nos. 7-1, 7-2]. These documents are a matter of public record, and, as stated, the Court takes judicial notice of them. See Watterson, 987 F.2d at 3. Additionally, Plaintiff did not contest the Defendants' production of exhibits or otherwise respond in any way to the production of the documented communications between the parties, therefore, the assertions for which Defendants proffer these exhibits are also deemed conceded. See Sigma-

---

[1] Specifically, the complaint does not list the events in a chronological order or in any factual grouping. [See Compl.]. Additionally, the complaint has numerated paragraphs ¶¶ 1–20, then stops numerating paragraphs, then continues at paragraph 91. [Id.]

Aldrich Corp. v. Stonebrook, No. 23-cv-10140-DJC, 2025 WL 1927623, at *7 (D. Mass. July 12, 2025) (citing Uranga v. U.S. Citizenship & Immigr. Servs., 490 F. Supp. 3d 86, 109 (D.D.C. 2020) (explaining that "when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); Mahoney v. Found. Med., Inc., 342 F. Supp. 3d 206, 217 (D. Mass. 2018) (deeming a claim not addressed in an opposition to a motion to dismiss waived); Perkins v. City of Attleboro, 969 F.Supp.2d 158, 177 (D. Mass. 2013) (same).

### A. **Relevant Facts**

#### i. **The Dogs**

Plaintiff is a resident of Fitchburg, Massachusetts who owns five dogs ("the Dogs").[2] [Compl. ¶ 10; at 28]. In or around 2023, Plaintiff's neighbors complained to the City about the barking coming from the Dogs at Plaintiff's property. [Compl. ¶11; BOH Mins. at 5, ECF No. 7-1]. In response to the complaints, Plaintiff implemented several mitigation measures, including "constructing fences, soundproofing dog enclosures, hiring a professional trainer, and rehoming one dog." [Compl. ¶ 11]. Following his attempts to mitigate, Plaintiff was issued a citation, which he alleges was "based on a fabricated ordinance" by Defendant Barbadoro, the then Building Commissioner for the City. [Id. ¶ 13] After continuing to receive complaints, the City of Fitchburg Board of Health ("BOH") held a hearing on September 7, 2023. [BOH Mins. at 2]. Plaintiff was provided notice of the hearing via a letter dated August 24, 2023. [ECF No. 7-2 at 68]. Plaintiff attended and spoke at the hearing, along with his neighbors and municipal animal control officers. [BOH Mins. at 2]. In the Complaint, Plaintiff alleges that during the hearing, Mr. 'Cookie' Craigin

---

[2] The Dogs names are "Sky," "Max," "Tiny," "Lili," and "Lucca" respectively. [Compl. at 28]. Sky and Max are German Shepards, while Tiny, Lili, and Lucca are poodle mixes. [Id.]

(husband of dog complainant, Ann Craigin), "publicly confirmed a familiar relationship with Health Director," Defendant Curry. [Compl. ¶16]. Plaintiff insinuates that this alleged relationship is a conflict of interest. The Court notes that the BOH meeting minutes do not make reference to any testimony by Defendant Craigin. [See BOH Mins.].

Following the hearing, the BOH declared the Dogs a nuisance, but did not declare them dangerous. [BOH Mins. at 5–6] Notably, the BOH scheduled a follow-up meeting within two months for a progress report. [Id.] The BOH did not order the Dogs be seized or relocated. [See id.] The BOH reiterated its decision in a letter sent to Plaintiff dated September 8, 2023. [Compl. ¶14, at 18 ("Exhibit C")]. In response, Plaintiff sent a "Conditional Acceptance Letter," outlining that he will "accept [the] terms in the [BOH] letter if" certain conditions were agreed upon.[3] [Id.] Plaintiff alleges that The City did not respond to his letter or its demands. [Compl. ¶ 14]. The BOH set another hearing concerning the progress in the nuisance reduction for November 2, 2023, and Plaintiff received notice that the hearing was scheduled. [ECF No. 7-2 at 16].  The attendants at the hearing included the complainants of the Dogs along with Fitchburg City Councilors Defendants Craigin and Beauchemin, who spoke in support of the complainants; however, Plaintiff did not attend the hearing. [Id.; Compl. ¶ 18] After hearing the statements from the complainants and the Defendants, the BOH determined that Plaintiff did not make the necessary abatements to

---

[3] The terms on which Plaintiff attempted to condition his acceptance of the determination that the Dogs were nuisances include: (1) that he be provided with a copy of the order with a signature under the pains and penalties of perjury; (2) that the Dogs are not to be seized or impounded but for a trial court decision; (3) that he be provided with certified copies of affidavits from each complainant that spoke at the hearing; (4) that he be provided with an affidavit from the two animal control officers who spoke at the hearing; (5) and that he be provided with affidavits from all members of the BOH who were present. [Compl. at 18 ("Exhibit C")]. The letter contained a 15-day response window, boldly stating a failure to respond and produce the documents constitutes "agree[ment] to [] discharge" the order against Plaintiff. [Id.]

reduce the nuisance of the Dogs that were stipulated at the prior hearing, and issued a ruling that the Dogs be removed from the neighborhood. [ECF No. 7-5 at 4]. The decision of the BOH as memorialized on March 7, 2024 when it sent Plaintiff a letter titled "Decision After Hearing and Order of the Board of Health." [Compl. ¶15; ECF No. 7-2 at 16].

On March 13, 2025, The City commenced a civil action in Fitchburg District Court (No. 2516CV0072) against Plaintiff with a one-count complaint seeking enforcement of the removal order issued by the BOH along with a motion for preliminary injunction seeking the same relief. [See ECF No. 7-2 at 2-10 (Fitchburg Dist. Ct. Compl.); ECF No. 7-3 (Mot. for Prelim. Injunction)]. According to the motion, the Dogs continued to reside with Plaintiff at the time of filing on March 13, 2025. [ECF No. 7-2 at 8 ("As of the date of this Verified Complaint, [Plaintiff] continues to have the dogs[] residing with him")]. Plaintiff filed an opposition to the motion for preliminary injunction on April 10, 2025. [See ECF No. 8 at 2–5].  On April 11, 2025, the Fitchburg District Court dismissed The City's complaint on the basis that the action was not the proper enforcement procedure under Mass. Gen. Laws ch.140, § 157 (2012).[4] [Compl. ¶ 17, at 35 (Exhibit H)]. To the Court's knowledge, no further action has been taken regarding the Dogs or the separate civil action.

### ii.  Plaintiff's Other Interactions with City Representatives

Plaintiff describes other isolated interactions with Defendants that do not fit neatly into a coherent narrative of the case. Essentially, these additional allegations serve as the basis for Plaintiff's claims regarding conflicts of interest or abuse of process claims, so the Court will include them here.  On November 1, 2023, Plaintiff alleges that his brother "personally observed

---

[4] Specifically, the court noted that § 157(h) states that that the seizure and impoundment must be done "by a law enforcement of animal control officer." [Compl. at 35 (Exhibit H) (Citing Mass. Gen. Laws ch.140, § 157(d) (2012)].

and recorded [Defendant] Cragin" photographing Plaintiff's neighbor's vehicle. [Compl. ¶ 20]. A photograph "that appeared to be taken from the same angle and location" was then uploaded to SeeClickFix.com.[5] [Id.] Plaintiff also alleges that on March 8, 2024, he submitted record requests to the City seeking "Oaths of Office and Conflict of Interest Law Education certifications" for Defendants Curry, Cragin, and Beauchemin. [Compl. ¶ 19]. The City responded and stated that all three of the aforementioned Defendants "had [not] completed or filed the required Conflict of Interest Law education certificates," and that Defendant Curry "did not have an Oath of Office on file at the time he initiated enforcement actions against Plaintiff." [Id.]

### B. Procedural History

Plaintiff initiated this action in the Worcester County Superior Court on May 22, 2025. [Compl. at 1; ECF No. 1 ¶ 1]. Defendants' removed this action to this Court as Count I of Plaintiff's complaint arises under the Constitution and laws of the United States, therefore granting this Court original jurisdiction under 28 U.S.C. § 1331. [ECF No. 1 ¶¶ 3–4]. Plaintiff has not challenged the Courts jurisdiction over the matter. Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 6]. Plaintiff responded, opposing the Motion. [ECF No. 8].

### II.    LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311-12 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005)); Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual

---

[5] SeeClickFix.com is an application which some cities and towns use that allows citizens to identify repair needs, report issues, share feedback, etc. See SeeClickFix, SeeClickFix, https://seeclickfix.com/ (last visited Mar. 12, 2026).

allegations to state a claim to relief that is "both actionable as a matter of law and 'plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted). Further, except in a few limited circumstances, "an adequate complaint must include not only a plausible claim but also a plausible defendant," meaning there must be sufficient factual allegations to establish that a named defendant is plausibly liable for the unlawful acts alleged in the complaint. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

The Court is mindful of Souza's *pro se* status and acknowledges that *pro se* plaintiffs' complaints are "held to 'less demanding standards than those drafted by lawyers' and are read liberally on a motion to dismiss." Gonzalez v. Harr Toyota Inc., 23-cv-40145-MRG, 2025 WL 764061 *2 (D. Mass. 2025) (quoting Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Although *pro se* Plaintiffs are held to a less demanding standard, they still must follow procedural rules and "dismissal remains appropriate when the court lacks jurisdiction" or "when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Lefebvre v. Comm'r Internal Rev., 830 F.2d 417, 419 (1st Cir. 1987)).

## III.    DISCUSSION

Plaintiff's Complaint lists seven counts against the Defendants. [Compl at 3–4]. The claims, as alleged,[6] are: (1) "Violation of Civil Rights" pursuant to "Section 1983," 42 U.S.C §

---

[6] At this stage in the Order, the Court simply reproduces the claims as they appear in the Complaint without accepting them as valid causes of action.

7

1983, and the Massachusetts Declaration of Rights; (2) "conflict of interest" and violations of Mass. Gen. Laws ch. 268A; (3) "Abuse of Process and Procedural Misconduct;" (4) fraud and constrictive fraud; (5) civil harassment and emotional distress; (6) "Administrative Dishonor;" and (7) discrimination and equal protection violations pursuant to Section 1983. [Id.] The court will first address the Section 1983 counts (Counts I, VII) consecutively, and then consider the remaining counts (Counts II, III, IV, V, VI).

A.    **Constitutional Claims Under Section 1983 (Counts I & VII)**

Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights," such as the Fourteenth Amendment's rights to due process and equal protection. Gagliardi, 513 F.3d at 306. In order to succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). Plaintiff alleges Defendants violated his rights to equal protection and due process guaranteed by the Fourteenth Amendment of the United States Constitution. [Compl. at 3–4]. Plaintiff further alleges that Defendants deprived him of unspecified rights under the Massachusetts Declaration of Rights. While it is unclear exactly which rights Plaintiff refers to, the allegations pursuant to the Constitution and the Massachusetts Declaration of Rights are pleaded together in the Complaint, so the Court construes them to allege due process and equal protection violations as well. Those rights are protected by both instruments: "[i]ndividuals are guaranteed due process of law both under the Fourteenth Amendment to the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights." Frechette v. D'Andrea, 234 N.E.3d 935, 948 (Mass. 2024) (citing Kligler v. Attorney Gen., 198 N.E. 1229, 1247 (Mass. 2022)). Therefore "[t]he court will refer simply to the federal

Equal Protection Clause since 'equal protection of the law considerations are substantially the same under the State and Federal Constitutions.'" Vickowski v. Hukowicz, 201 F. Supp. 2d 195, 212 (D. Mass. 2002) (quoting Baird v. Attorney Gen., 360 N.E.2d 288, 300 (Mass. 1977)).

### a. Due process

The Fourteenth Amendment provides that no person shall be deprived of "life, liberty or property, without due process of law." U.S. CONST. AMEND XIV. The Fourteenth Amendment due process clause includes both a substantive due process right and a procedural due process right. Maldonado-Gonzalez v. P.R. Aqueduct & Sewer Auth., 158 F.4th 27, 34 (1st Cir. 2025). Procedural due process "guarantee[s] ... that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." Id. (quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (alterations in original)). Substantive due process "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005)). In the instant case, Plaintiff has alleged a violation of his rights to "due process, property, and equal protection." [Compl. at 3]. Construing the Complaint liberally, Plaintiff appears to be alleging violations of both procedural due process and substantive due process, as well as an equal protection violation.

### i. Substantive Due Process

The Court will first consider the substantive due process violation. Here, the property interest at stake is the Dogs. The First Circuit has recognized that constitutional protection of property "encompasses people's pet cats and dogs." Maldonado v. Fontanes, 568 F.3d 263, 272 (1st Cir. 2009). The key inquiry in a substantive due process claim is whether the "alleged

9

misconduct "shocks the conscience." Id. (citing Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2009) ("The substantive component of the Due Process Clause is violated by executive action 'when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (citation omitted))).

The substantive due process claim alleged by Plaintiff against the Town resembles those brought in Maldonado. 568 F.3d at 266–67. In that case, the local municipality assumed control of public housing complexes and enacted a "a pet policy, which prohibited the residents from having cats or dogs." Id. at 266. The defendants sent warnings to the residents that they were enacting this policy, and five days after sending notice, the defendants sent uniformed municipal employees and workers from an animal control company to remove the remaining pets.[7] Id. The plaintiffs filed suit against the mayor and the local municipality for the policy alleging the unconstitutional seizure and inhumane killing of their pets from their homes. Id. The plaintiffs alleged that their animals were injected with an unknown substance, "slammed against the side of a van[,]" and if the animals survived being injected and slammed, they were "thrown to their deaths off a 50-foot-high bridge[.]" Id. at 267. While the conduct of the defendants in Maldonado can certainly be viewed as "shocking the conscience" at first blush, the First Circuit noted that the Supreme Court is reluctant to find substantive due process violations unless the conduct was "intended to injure in some way unjustifiable by any government interest." Id. at 273 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (quotation omitted)).   The First Circuit did not reach a determination as to the whether the cruel enforcement of the policy violated the plaintiffs'

---

[7] There were alleged procedural due process with the notices, including that the that the notices were in English but not Spanish despite a large Spanish speaking population residing in the buildings. Maldonado, 568 F.3d at 266. The Court acknowledges these accusations; however they are irrelevant to Plaintiff's own substantive and procedural due process claims.

Fourteenth Amendment protections due to a finding of qualified immunity, however the court did recognize that there was a "legitimate interest in restricting ownership of pet cats and dogs in public housing."[8] Id. at 273. Returning to the case at bar,  for Plaintiff to claim that there was a substantive due process violation he must claim that the BOH had an unjustifiable government interest when they declared that the Dogs were nuisances.

Plaintiff's substantive due process claim must fail because he has not alleged a deprivation that the Constitution forbids. First, Plaintiff has not been deprived of "life, liberty, or property." U.S. CONST. AMEND XIV. While the City attempted to remove the Dogs from Plaintiff's property by filing suit with the Fitchburg District Court, its efforts were unsuccessful. [ECF No. 7-2 at 2–10; ECF No. 7-4 at 2–5]. To the Court's knowledge, Defendants have not initiated new efforts to remove the Dogs, and Plaintiff still has possession of them. A municipal government's determination that an individual resident's dogs are nuisance does not constitute a deprivation of property where the individual retains the dogs and the dogs are not harmed in any way. See Berry v. Baca, No. CV 00-0011 JP/WWD, 2000 WL 36739497, at *2 (D.N.M. Sept. 25, 2000) ("[A] person's property interest in a dog is not deprived when . . . the dog is not permanently damaged in any way." (citations omitted) (alterations in original)). The determination of the BOH that the Dogs are nuisances does not "permanently damage" the Dogs, therefore Plaintiff has not been deprived of any protected interest by the Defendants. See id.

Second, the determination of the local municipality that the Dogs are nuisances itself does not "shock the conscience." See Maldonado, 568 F.3d at 272.  Even in Maldonado, where many of the plaintiffs' pets were ultimately killed, the court noted that there was "nothing conscience-

---

[8] The court did not reach a decision as to the issue of whether the enforcement violated the Fourteenth Amendment, instead finding that the mayor was protected under qualified immunity. Maldonado, 568 F.3d at 273.

shocking about the pet policy itself," where the policy that prohibited pets from residing in the housing complex did not require or authorize their killing. Id. at 273. Similarly, here, the nuisance determination did not require removal of the dogs nor euthanasia. The BOH has a legitimate governmental interest in reducing the noise level in residential neighborhoods. See Casey v. City of Newport, R.I., 308 F.3d 106, 114 (1st Cir. 2002) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 782 (1989)) (holding that the government has "a substantial interest in protecting its citizens from unwelcome noise"). Here, Plaintiff has pleaded a conclusory accusation that his due process rights were violated but has not alleged any facts to support a substantive due process violation. [See Compl. at 3]. Because Plaintiff does not sufficiently show that the actions of the BOH were "unjustifiable" or that they rise to the level of shocking the conscience, the substantive due process claim must be **dismissed**.

As to the individual Defendants, the only allegation that there were substantive due process violations during the BOH hearings was that "Mr. 'Cookie' Cragin" confirmed that he had a familiar relationship with Defendant Curry, who was serving as the Health Director. [Compl. ¶16]. This alone does not shock the conscience as to render the hearing in violation of constitutional protections. The mere fact that a neighbor who brought a complaint has a familial relationship with a member of the BOH does not give rise to a due process violation. See U.S. v. Williams, 949 F.3d 1056, 1062 (7th Cir. 2020) (citing Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1372 (7th Cir. 1994)) (reviewing allegations of a judge's conflict of interest and noting, "a preexisting relationship alone does not create a due process violation."). Plaintiff has not alleged any additional facts or conduct by the Defendants to warrant a finding that their behavior "shocks the conscience," and thus has failed to allege a substantive due process claim. Maldonado-Gonzalez, 158 F.4th at

12

35 ("If executive conduct does not shock the conscience, the plaintiff has failed to state a constitutional violation and the inquiry ends.").

## ii. *Procedural Due Process*

For his procedural due process claim, the Court construes the Complaint as alleging that Plaintiff has a property interest in his dogs and that he was not afforded procedural safeguards in the determination that labeled them a nuisance. [See Compl. ¶15]. The basic principle behind the right to procedural due process is a "guarantee of fair procedure." Zinermon v. Burch, 494 U.S. 113, 125 (1965). A fair hearing "implies that the person adversely affected was afforded the opportunity to respond, explain, and defend." Gorman v. U. of Rhode Island, 837 F.2d 7, 13 (1st Cir. 1988). Therefore, for Plaintiff to maintain a claim that the Defendants violated his Fourteenth Amendment right to procedural due process he must prove that he was actually deprived of a constitutionally protected interest without a meaningful opportunity to be heard. Maldonado-Gonzalez, 158 F.4th at 34.

Plaintiff's procedural due process claim consists of the conclusory statement that "Defendants, acting under color of law, deprived Plaintiff of constitutional rights including due process [and] property." [Compl. at 3]. Plaintiff alleges in his opposition to Defendants' motion that three facts support his claim for a procedural due process violation: (1) that the "hearings were conducted without proper investigation or evidence;" (2) that the "Director of the [BOH] failed to disclose multiple written communications from Plaintiff;" and (3) that "[h]earing officers had personal conflicts of interest due to family connections to complainants." [ECF No. 8 at 2].[9] The

---

[9] The Court will consider the factual allegations in Plaintiffs opposition to the motion to dismiss given his *pro se* status. See Wood v. Cognex Corp., No. CV 25-10023-NMG, 2025 WL 3033890, at *2 (D. Mass. Oct. 30, 2025) (Citing Stevenson v. Amazon.com, Inc., No. CV 15-13505-FDS, 2016 WL 2851316, at *1 (D. Mass. May 13, 2016)) ("The Court can also consider the factual allegations in a *pro se* plaintiff's opposition to a motion to dismiss."). However, "[p]*ro se* status

Court notes that Plaintiff's opposition does not explain how the determination that the Dogs are a nuisance has caused him any injury. [ECF No. 8 at 2].

As previously stated, Plaintiff has not suffered any actual deprivation from the Defendants as, to the Courts knowledge, he still retains possession of the Dogs. *Supra* at p. 11. This is fatal to any procedural due process claim Plaintiff alleges. See Clukey v. Town of Camden, 894 F.3d 25, 33 (1st Cir. 2018) ("To establish a due process violation, [a litigant] must show first, a deprivation of a protected property interest, and second, a denial of due process.") (quoting Núñez Colón v. Toledo–Dávila, 648 F.3d 15, 22–23 (1st Cir. 2011) (internal quotations omitted) (alterations in original)); Jackson v. Getchell, No. CIV.A. 86-1956-MA, 1986 WL 15472, at *3 (D. Mass. Dec. 12, 1986) ("Without a showing of some deprivation, the plaintiff[] do[es] not state a due process claim.").

Even assuming *arguendo* that Plaintiff was actually deprived of a protected property interest, this claim still lacks merit as the record shows he was afforded due process. Plaintiff was presented with *two* opportunities to be heard before the BOH and was presented with the opportunity to be heard in the Fitchburg District Court. [Compl. ¶¶ 16, 17; ECF No. 7-2 at 16]. Plaintiff attended the first BOH hearing, but not the second. [Compl. ¶¶ 16, 18; ECF No. 7-1 at 2; ECF No. 7-2 at 16]. The Determinations of the BOH (even though they did not deprive Plaintiff of a property interest) afforded plaintiff with "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Amsden v. Moran, 904 F.2d 748, 753 (quoting Armstrong, 380 U.S. 552). "The fundamental requisite of due process is the opportunity to be heard," and

---

does not, however, relieve a party from complying with procedural rules or from presenting sufficient facts to state a viable claim." Id. (citing Brown v. Dep't of Veteran Affs., 451 F. Supp. 2d 273, 277 (D. Mass. 2006).

Plaintiff's BOH hearings as well as the civil suit against him provided him with such opportunities. Grannis v. Ordean, 234 U.S. 385, 394 (1914); [See Compl. ¶ 16; ECF No. 7-2 at 16]. Plaintiff attended the first BOH hearing concerning the Dogs, and defended himself and his interests. [Compl. ¶16; ECF No. 7-2 at 6 ("Mr. Souza stated that he is doing everything he can to stop the problem and he is not a bad person and he doesn't want to bother the neighbors, he wished they would go to him regarding the issue.")]. Plaintiff's decision not to attend the second hearing precludes finding a procedural due process violation. See Calderon-Garnier v. Sanchez-Ramos, 531 F. Supp. 2d 212, 224 (D.P.R. 2008), aff'd sub nom. Calderon-Garnier v. Rodriguez, 578 F.3d 33 (1st Cir. 2009) (no due process violations found where plaintiff failed to attend scheduled hearings); see also Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 53 (1st Cir. 2005) (affirming that  no due process violations are found where plaintiff's "inability to present his side of the story was due to his failure to participate."). As for the Fitchburg District Court proceedings, it is evident that Plaintiff was afforded an opportunity to be heard meaningfully, as he filed an opposition to the Preliminary Injunction. [ECF No. 7-4 at 2–5]. Plaintiff remains free to challenge the determinations of the BOH through the proper channels if he is not satisfied with their decision, however these hearings did not deprive him of his right to procedural right to due process. Therefore, Plaintiff's claim as to procedural due process (Count I) is **DISMISSED**.

### b. **Equal Protection**

The Court next turns to Plaintiff's claim that the actions of the Defendants "selectively enforced ordinances and administrative penalties against Plaintiff while falling to apply the same standards to similarly situated residents." [Compl. ¶ 92]. Plaintiff alleges that the acts of the Defendants' were "based in part on Plaintiff's family status, cultural background, and national

origin." [Id. ¶ 93]. Plaintiff offers no further facts describing what his family status, cultural background, or national origin may be.

"The Equal Protection Clause requires that 'all persons similarly situated . . . be treated alike.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). In order to allege an Equal Protection violation, a plaintiff must allege differential treatment compared to someone who is similarly situated. Koelsch v. Town of Amesbury, 851 F. Supp. 497, 501 (D. Mass. 1994) (quoting Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan., 927 F.2d 1111, 1118 (10th Cir. 1991)) ("A violation of equal protection occurs when the government treats someone differently than another who is similarly situated."). In a discrimination analysis, "similarly situated" means "the two individuals or situations must be similar 'in all relevant aspects.'" Cardona Jimenez v. Bancomerico de Puerto Rico, 174 F.3d 36, 42 (1st Cir. 1999) (quoting Dartmouth R. v. Dartmouth College, 889 F.2d 13, 19 (1st Cir.1989)).

If a plaintiff does not allege membership of a protected class, they "can bring an equal protection claim as a 'class of one,'" where they "must show that '[they] ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130 (1st Cir. 2023) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). To meet their burden of pleading others similarly situated were treated differently "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).

16

Returning to the present case, Plaintiff states in a conclusory manner that he was subject to differential treatment based in his "family status, cultural background, and national origin," but fails to specify how he is a member of any of these protected classes. [Compl. ¶ 93]. Because Plaintiff has not sufficiently pled that he is a member of a protected class, his claim is viewed as a "class of one." Back Beach Neighbors Comm., 63 F.4th at 130 (quoting Olech, 528 U.S. at 564). Plaintiff's complaint fails to show a "extremely high degree of similarity between themselves" and a similarly situated resident. Cordi-Allen, F.3d at 251 (quoting Clubside, Inc., 468 F.3d at 159); [See Compl.]. Plaintiff has only stated in conclusory terms that he was subjected to a local municipality enforcement "while others were not." [Compl. ¶ 93]. This allegation alone is insufficient to meet the pleading standard for a Section 1983 claim. See Campagna v. Mass. Dept. of Envtl. Protec., 206 F. Supp. 2d 120, 127 (D. Mass. 2002) (quotation in original) (dismissing plaintiffs' Section 1983 claim where they failed to "allege facts that would support a finding [they] [were] 'similarly situated'" to others), aff'd, 334 F.3d 150 (1st Cir. 2003). Therefore, Plaintiff's Equal Protection claim (Count VII) is **DISMISSED**.[10]

B. **Conflict of Interest and Violations of Mass. Gen. Laws ch. 268A Claim (Count II)**

Plaintiff asserts that "Defendants Curry, Cragin, and Beauchemin failed to disclose known conflicts and used public office to interfere with administrative outcomes" by failing to disclose

---

[10] After dismissing Plaintiff's Section 1983 claims, the only remaining claims are based in state law, and this Court thus has pendent jurisdiction over the remaining claims. While the Court could decline to exercise its supplemental jurisdiction over the state-law claims, because it has reviewed Plaintiff's claims in detail, the Court elects to exercise pendent jurisdiction for the sake of judicial efficiency. See Rizzitano v. Dep't of Child. & Fams., No. CIV.A. 13-11154-JLT, 2014 WL 347607, at *5 (D. Mass. Jan. 29, 2014).

personal relationships, violations of ethics requirements, and failure to rescue. [Compl. at 3]. The Court agrees with the Defendants' argument that the named statute does not create a private right of action. See Mass. Gen. Laws ch. 268A, § 6A (1984); id. at ch 268B, § 3 (2024)[11] ("The [state ethics] commission shall . . . carry out chapter 268A"). In his opposition to Defendants' motion, Plaintiff does not refute that there is no private cause of action under Mass. Gen. Laws ch. 268A, but rather re-iterates due process arguments. [ECF No. 8 at 1–4]. As previously discussed, these claims hold no merit. See *supra* pp. 8–11. Therefore, Plaintiff's claim for Conflict of Interest in Violation of Mass. Gen. Laws ch. 268A (Count II) is **DISMISSED**.

### C.      Abuse of Process Claim (Count III)

To sustain a claim for abuse of process, a plaintiff must establish that the "process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 159 (D. Mass. 2012) (quotation omitted), aff'd, 714 F.3d 29 (1st Cir. 2013). "Thus, the three elements of abuse of process are (1) 'process' was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage." Id. (citations omitted).

Plaintiff claims that "Defendants pursued enforcement with false claims, without lawful process, and outside of regulatory channels." [Compl. at 3]. The Court notes Defendants' argument that the phrase "without lawful process" would run contrary to Plaintiff's claim. [ECF No. 7 at 9–10]. However ironic the language of the claim is, under a liberal reading of Plaintiff's complaint

---

[11] The statute states in relevant part: "Any public official . . . who in the discharge of his official duties would be required knowingly to take an action which would substantially affect such official's financial interests . . . shall file a written description of the required action and the potential conflict of interest *with the state ethics commission* established by said chapter two hundred and sixty-eight B." Mass. Gen. Laws ch. 268A, § 6A (1984) (emphasis added).

18

as is required, it is clear that he is referring to the process in which the BOH took in determining that the Dogs are nuisances and in the issuance of the zoning violation. *Supra* at p. 3–5; see Erickson, 551 U.S. at 94 (stating courts must construe *pro se* plaintiffs' complaints liberally). Therefore, the Court finds that Plaintiff has successfully alleged that there was a process used against him.

While the Court can liberally interpret that Plaintiff is referring to the BOH process to satisfy the first element of an abuse of process claim, this liberal interpretation cannot be extended to the second element. Plaintiff's complaint is devoid of any mention of an ulterior or illegitimate purpose. [See Compl.]. Plaintiff fails to allege any reason, other than legitimate complaints by other residents, for the Defendants to initiate the process against him. [Id.] This is fatal to Plaintiff's claim. See Americus Mortg. Corp. v. Mark, No. CIV.A. 12-10158-GAO, 2013 WL 3106018, at *10 (D. Mass. June 17, 2013) ("The abuse of process claim therefore fails to survive the motion to dismiss given the absence of facts to set out a plausible ulterior or illegitimate motive.").

As Plaintiff has not presented evidence for an ulterior motive on the part of the Defendants, the Court need not discuss the sufficiency of Plaintiff's claimed damages.[12] Additionally, regarding the abuse of process claim against the municipal officials in their official capacity, Section 10(c) of the Massachusetts Tort Claims Act ("MTCA") explicitly provides immunity to municipalities and their employees acting in their official capacity for claims of "malicious abuse

---

[12] The Court notes that Plaintiff's estimate for $38,123,000.00 in damages is extremely high and based in part on a document titled "Notice of Liability," which repeats incorrect interpretations of law commonly associated with the "sovereign citizens" movement. [Compl. at 4; See Compl. at 20–21 "Exhibit D-1"]; Libertad v. Massachusetts, No. 21-03888-SDG, 2022 WL 1136727, at *2 (N.D. Ga. Apr. 18, 2022) ("Dismissal of this action is appropriate and warranted based on its legal insufficiency and the frivolity inherent in all sovereign citizen legal theories—such sovereign citizen claptrap has been rejected over and over." (cleaned up)) (collecting cases).

of process." Mass. Gen. Laws ch. 258 § 10(c)). Accordingly, Plaintiff's claim for abuse of process (Count III) is **DISMISSED**.

### D.      Fraud Claim (Count IV)

Under Massachusetts law, a plaintiff bringing a claim for fraud must show "that (1) the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, and (5) the plaintiff acted to his detriment.'" Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc., 266 F. Supp. 3d 502, 537 (D. Mass. 2017) (emphasis added) (quoting Fiorillo v. Winiker, 85 F. Supp. 3d 565, 574 (D. Mass. 2015)). A false representation can occur through omission, or "the failure to disclose a material fact." Van v. Am. Airlines, Inc., 370 F. Supp. 3d 218, 232 (D. Mass. 2019). Additionally, fraud claims are subject to Rule 9(b)'s heightened pleading requirement. See In re Lupron Mktg. & Sales Practices Litig., 295 F.Supp.2d 148, 181–82 (D. Mass. 2003); Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, Rule 9(b) requires an "averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).

Plaintiff's allegations against the Defendants are that "[t]he citations and orders were based on non-existent ordinances and unsupported allegations with knowledge of falsity." [Compl. at 4]. Plaintiff also alleges that the Defendants issued citations, "use[d] false ordinances[,] or misrepresented legal authority." [Id.] Plaintiff again lists only conclusory statements that the citation he was issued on July 12, 2023 was fraudulent and fails to provide the Court with sufficient

20

basis for the claim. [See id.]. The Court need not address the issue of whether a plaintiff may bring a claim against the municipality because Plaintiff's allegations do not amount to an allegation of fraud. "Mere allegations of fraud are 'too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.'" Petricca v. Simpson, 862 F. Supp. 13, 16 (D. Mass. 1994) (quoting Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985)). The mere allegation that Plaintiff believes the citation he was issued was based on a fake ordinance is not sufficient to bring a claim of fraud.[13] See id. Plaintiff also fails to allege reliance or damages on this allegedly false ordinance. [See Compl.]. In his opposition to Defendants' motion to dismiss, Plaintiff additionally alleges that there were false and contradictory statements submitted during the Fitchburg District Court proceedings. [ECF No. 8 at 3]. This additional allegation is not only improper procedurally, but fails as Defendants' case was dismissed, therefore Plaintiff still has suffered no damages. Therefore, Plaintiff's fraud claim (Count IV) is **DISMISSED**.

### E. "Civil Harassment" and Emotional Distress Claim (Count V)

Civil harassment itself is not a cause of action, but rather an element in harassment prevention orders under Mass. Gen. Laws ch. 258E, § 1 (2010). Therefore, Plaintiff's claim for "Civil Harassment" is **DISMISSED** for failure to state a claim. Emotional Distress itself is also not a cause of action, however, given a liberal reading of Plaintiff's *pro se* complaint, the Court presumes the Plaintiff intended this claim to be Intentional and/or Negligent Infliction of Emotional Distress.

The Massachusetts Tort Claims Act (MTCA) is the exclusive remedy for bringing tort claims against Commonwealth, its municipalities, and public employees acting in their official

---

[13] The Court notes that the ordinance which Plaintiff refers to, Fitchburg, Mass., Code of Ordinances ch. 181, § 181.3267, is a zoning ordinance. The Court does not reach the merits as to whether Plaintiff violated this ordinance.

capacity. Mass. Gen. Laws ch. 258, § 1 –2 (2009). To the extent that Plaintiff has pleaded a claim for Intentional Infliction of Emotional Distress ("IIED") against the municipality and individual Defendants in their official capacity, such a claim is barred under Mass. Gen. Laws ch. 258, § 10(c) (1993). Estock v. City of Westfield, 806 F. Supp. 2d 294, 303 (D. Mass. 2011) ("Pursuant to the Massachusetts Tort Claims Act, public employees sued in their official capacity are not liable for intentional torts" (citing Mass. Gen. Laws ch. 258, § 10(c) (1993)).

Section 10(c) explicitly provides immunity to municipalities and their employees acting in their official capacity for claims of  "intentional mental distress." Mass. Gen. Laws ch. 258, § 10(c)) (1993): see Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 835 (Mass. App. 2012) ("The Legislature specifically listed intentional mental distress (which we view as the same as intentional emotional distress)"). Therefore, to the extent the claim alleges IIED against the municipality and individual Defendants in their official capacity, it is **DISMISSED** pursuant to the MTCA.

In the case of the bar, Plaintiff fails to allege the Defendants were acting outside the scope of their official capacity as members of the local municipality, except for Defendant Cragin. [Compl. ¶ 20]. The Complaint makes one allegation that Defendant Cragin was acting outside of the scope of her official capacity when she "briefly stopped her vehicle behind Plaintiff's property" and "took a photograph of [Plaintiff's neighbor's] vehicle." [Id.] This photograph then ended up on SeeClickFix.com. [Id.] Even when the case caption refers to defendants in their individual and official capacities, when a complaint fails to allege conduct by a defendant outside of their official capacity, the Court may construe the defendant's actions as occurring purely within their official capacities. Isijola v. Grasso, 768 F. Supp. 3d 166, 177 (D. Mass. 2025) (citing Bache v. Town of Boxborough, No. 21-11187-FDS, 2022 U.S. Dist. LEXIS 23018, at *10 (D. Mass. Feb. 9, 2022) (finding the complaint failed to state a claim of intentional tort against a police officer in his

individual capacity because it did not allege he acted outside of his official capacity while enforcing a court order)). Apart from the photograph incident described above, all the allegations Plaintiff makes against the other individual Defendants arise from conduct they engaged in as municipal officials. Accordingly, the Court holds that only Plaintiff's claims against Defendant Cragin may be construed as occurring in an individual capacity. As to all other individual Defendants, Plaintiff's claims shall be construed as solely arising in the Defendants' official capacity.

Regarding Plaintiff's IIED claim against Defendant Cragin in her individual capacity, "[u]nder the MTCA, "[i]ndividuals ... are not shielded from liability in their personal capacities for intentional torts they commit." Madison v. Cruz, 359 F. Supp. 3d 135, 145 (D. Mass. 2019) (quoting T.K. v. Town of Barnstable, No. 17-cv-11781-DJC, 2018 WL 3748166, at *7 (D. Mass. Aug. 6, 2018); see also Mass. Gen. Laws ch. 258, § 2 (2009). To make out a claim of IIED, Plaintiff must show that "(1) the [defendant] intended, knew, or should have known that his conduct would cause emotional distress;  (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress [sustained by the plaintiff] was severe." Polay v. McMahon, 10 N.E. 3d 1122, 1128 (Mass. 2014) (citing Howell v. Enter. Publ'g Co., LLC, 920 N.E. 2d 1, 28 (Mass. 2010)); see also Restatement (Second) of Torts §46 cmts. d & j (1965). "The standard for making a claim of intentional infliction of emotional distress is very high." Polay 10 N.E. at 1128 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). "'Outrageous' in [the IIED] context means 'a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable.'" Coucelos v. City of Woburn, No. 23-12063-GAO, 2024 WL 4309378, at *14 (D. Mass. June 18, 2024) (quoting Conway v. Smerling, 635 N.E. 2d 268, 273 (Mass. App. Ct. 1994). Here, Plaintiff's allegations are insufficient to state a claim for

23

IIED because the conduct described plainly does not rise to "extreme and outrageous" and Plaintiff has not alleged any severe emotional distress. See Coucelos, 2024 WL 4309378, at *14.

As for a potential claim for Negligent Infliction of Emotional Distress ("NIED") against the City or the individual Defendants in their official capacities, such a claim would not be barred under the MTCA.  Mass. Gen. Laws ch. 258, § (2) (2009) ("Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission."). However, here, Plaintiff's claim fails for procedural reasons.

Under the MTCA,

> [a] civil action shall not be instituted against a public employer on a claim for damages . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail.

Id. at § 4. This presentment requirement is a "statutory prerequisite for recovery under the Act." Shapiro v. City of Worcester, 982 N.E.2d 516, 522 (Mass. 2013) (citing Vasys v. Metro. Dist. Comm'n, 438 N.E.2d 836, 840 (Mass. 1982)). "Failure to comply with the presentment requirement is fatal" to a plaintiff's claim. Tivnan v. Registrar of Motor Vehicles, 734 N.E.2d 1182, 1187 (Mass. App. 2000). Plaintiff does not claim to have made proper presentation to the required executive officers for the alleged negligent torts of the Defendants acting within their official capacity. [See id.] Plaintiff failed to address these procedural issues in his opposition to Defendants' Motion. [See ECF No. 8 at 3]. As a result, Plaintiff's MTCA NIED claim (Count V), must be **DISMISSED** against the City and Defendants Curry, Pawlak, Barbadoro, Beauchemin in their official capacity. See Rashad v. Walsh, 877 N.E.2d 280 (Mass. App. 2007) (citations omitted) (holding that failure to comply with Mass. Gen. Laws ch. 258 § (2) (2009) results in dismissal of the action) (collecting cases).

Turning next to the photograph incident involving Defendant Cragin in her individual capacity, [see Compl. ¶ 20], while this allegation might be sufficient to show Defendant Cragin was acting outside the scope of her employment for the BOH, it fails to allege damage or injury *to Plaintiff*. A plaintiff bringing an NIED claim must demonstrate: "(1) negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomology, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Gindi v. Norton, 216 F. Supp. 3d 199, 205 (D. Mass. 2016) (quoting Smith v. City of Boston, No. 03–cv–10062–DPW, 2004 WL 1572626, at *11 (D. Mass. July 13, 2004)); Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982). The uploading of the images of the neighbor's vehicle to a website is insufficient to show that Plaintiff suffered emotional distress, let alone "physical harm manifested by objective symptomatology," which are required elements. Payton, 437 N.E.2d at 181. Defendant Cragin's photograph involved Plaintiff's neighbor's car – not any property owned by Plaintiff. Plaintiff's neighbor is not a party in this action. Accordingly, Plaintiff cannot meet required elements for his NIED claim and Count V against Defendant Cragin in her individual capacity is **DISMISSED**.

### F.     "Administrative Dishonor" Claim (Count VI)

Plaintiff brings a claim for "Administrative Dishonor" against all Defendants' for their "[f]ailure to rebut Plaintiff's lawful notices" which "constitutes dishonor and acquiescence under administrative procedure and contract law." [Compl. at 4]. To begin, "Administrative Dishonor" is not a recognized cause of action. In his opposition, Plaintiff claims that this claim is based on "breach of agreement principals and acquiescence by silence under Massachusetts contract and

estoppel law." [ECF No. 8 at 3]. [14] This single line assertion is made in Plaintiff's opposition to the motion to dismiss and is unsupported by any substantive argument or case law. Having failed to articulate a cognizable cause of action, Plaintiff's claim for "Administrative Dishonor" (Count VI) is **DISMISSED**.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 6, is **GRANTED** in full and this case is **DISMISSED**.


**SO ORDERED.**

Dated: March 30, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

---

[14] It is apparent to the Court that Plaintiff relied on generative AI in multiple instances to create his filings. [See e.g. ECF No. 8 at 4 (multiple instances where it appears the generative AI program is speaking directly to Plaintiff, using terms like "you" and "your" to refer to Plaintiff, and "he" to refer to defense counsel)]. While there is no rule requiring litigants to abstain from using generative AI, the Court warns Plaintiff that generative AI is unreliable for legal assistance and often "hallucinates," where it either misstates the law or completely fabricates causes of actions and caselaw. See Mata v. Avianca, Inc., No. 22-cv-1461 (PKC), 2023 WL 3696209, at *2 (S.D.N.Y. May 4, 2023) (exemplifying generative AI-production of multiple fabricated case citations); see also Allbaugh v. U. of Scranton, No. 3:24-CV-2237, 2025 WL 2484188, at *6 (M.D. Pa. Aug. 28, 2025) ("Increased use of Artificial Intelligence ("AI"), particularly Generative AI (including, but not limited to, OpenAI's ChatGPT or Google's Bard), in the practice of law raises a number of practical concerns for the Court, including the risk that the generative AI tool might generate legally or factually incorrect information, or that it might create unsupported or nonexistent legal citations.").